# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLISTER GEORGE, ) | 1:08-cv-00132 AWI YNP [DLB] (HC) |
| Petitioner, ) | |
| v. ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| W.J. SULLIVAN, Warden, ) | |
| Respondent. ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner was convicted in the Riverside County Superior Court of second degree murder with use of a firearm in 1993. (Exs. to Pet., Ex. D, Life Prisoner Evaluation, 1; Doc. #17 [hereinafter Prisoner Evaluation].) Petitioner was sentenced to fifteen years to life, plus two years weapons enhancement and was committed to prison on September 3, 1993 with a minimum eligible parole date of November 30, 1999. Id. On February 15, 2007, the Board of Parole Hearings (the Board) denied Petitioner parole for the fifth time. (See Exs. to Pet., Ex. C, Parole Hearing Transcript, February 15, 2007; Doc. #17 [hereinafter Tr.].) Petitioner filed a petition for writ of habeas corpus in the Riverside County Superior Court challenging the Board's reversal on June 23, 2007. (Answer, Ex. 1, Superior Ct. Pet., June 23, 2007.) The court denied the petition on the basis that Petitioner's commitment

offense alone was sufficient evidence on which the Board could rely to deny parole. (Answer, Ex. 2, Superior Ct. Decision, July 20, 2007.) Petitioner filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. Both courts denied the petitions without comment. (Answer, Ex. 5, Order of the Ct. of Appeal of Cal. Fourth Appellate District Division Two, October 2, 2007; Answer, Ex. 6, Order of the Supreme Ct. of Cal., December 12, 2007.)

Petitioner filed the instant petition with the United States District Court claiming that his due process rights were violated when: 1) the Board denied his parole even though there was no evidence that Petitioner was a current risk to public safety; 2) the Board recommended Petitioner participate in more self-help programs before his next parole hearing, but could not provide Petitioner with any information on what type of programs he should take or where these programs could be found; and 3) the Superior Court unreasonably denied Petitioner's petition for writ of habeas corpus in light of the evidence. (Pet., 4-5; Doc. #1.) Respondent filed an answer on February 2, 2009. (Doc. #14.) Petitioner filed an opposition to the answer on March 3, 2009. (Doc. #16.)

**FACTUAL BACKGROUND**

I. The Commitment Offense[1]

On November 29, 1989, Petitioner (17) and three friends, one of whom was Tommy Armendariz (28) (hereinafter to be referred to as the victim), were in an area known for drug sales. Officer Garcia approached them and called for back-up when he observed a sawed off shotgun in the vehicle. The victim assaulted Officer Garcia and they both rolled down an embankment. As they wrestled, the victim tried to pull Officer Garcia's gun from its holster and Officer Garcia tried to stop him. The victim yelled at Petitioner to "shoot the pig" and Officer Garcia observed Petitioner holding the shotgun. The victim continued to yell at Petitioner to shoot and Officer Garcia looked back at Petitioner and saw a flash and heard the discharge of the shotgun. Officer Garcia gained control of his weapon and shot the victim three times; the victim died on the spot. Just then, back-up officers

---

[1] All facts are taken from the February 15, 2007 Parole Hearing Transcript and the Life Prisoner Evaluation.

arrived and arrested Petitioner for attempted murder. Petitioner was found to have been under the influence of methamphetamine and phencyclidine (PCP) at the time. It was later found that the gun and the vehicle were owned by the victim.

II. Pre-Conviction Facts

Petitioner started using alcohol and marijuana in middle school. He has been in some sort of state custody since he was 13 years old. On August 27, 1985, Petitioner was convicted of burglary and declared a ward of the court. (Prisoner Evaluation, 3.) Petitioner spent 15 to 60 days in juvenile hall and was then placed in a private facility. Id. On July 23, 1986, Petitioner was convicted of "failure to adjust" and was placed in Boys' Republic. Id. Petitioner was released to his parents on May 22, 1987. On December 11, 1987, Petitioner was found to be under the influence of a controlled substance, in violation of court order, and was released to the custody of his parents after completing 6 to 120 days in juvenile hall. Id. On May 6, 1988, Petitioner was again found to be under the influence of a controlled substance and was placed in a private facility. Id. Petitioner also got into trouble for being on school campus when he should not have been and was again placed in a private facility. (Tr., 16.)

III. Post-Conviction Facts

Petitioner has not received a single 115 (serious rule violation) during his incarceration. (See Tr., 32-35.) Petitioner received six negative 128s (minor counseling write up), the last of which was for arriving late to work on January 13, 2006. Id. at 32. There is no record of Petitioner using drugs or alcohol in prison. (Exs. to Pet., Ex. A, Psychiatric Evaluation for the Board of Prison Terms, 3 March 3, 2004 [hereinafter Psychiatric Evaluation].)

Petitioner has participated in self-help programs, including: Alcoholics Anonymous, Narcotics Anonymous, Multi Islami, and Anger Management. (Prisoner Evaluation, 4-5.) Petitioner received his GED in 1993, completed one semester of community college in 2002, and regularly volunteers at the Facility "B" Literacy Program and the Inmate Youth Offender Program. (Tr., 31; Prisoner Evaluation, 6.) Petitioner has also served on the Men's Advisory Council (MAC). (Tr., 32).

1  Petitioner was a vocational welding student from 1997 through 2000, and worked in the PIA
2  Chair Facility from 2001 through 2005. (Prisoner Evaluation, 6.) Petitioner has been certified as a
3  welder and a sewing machine operator upholsterer through the Prison Industry Authority. (Exs. to
4  Pet., Ex. F.)   Petitioner has also been certified as a customer service specialist though the
5  Electronics Technicians Association, International. Id.

6  Petitioner was assigned to the yard crew on August 27, 2005 and was then reassigned to a
7  vocational office services class on October 12, 2006. (Tr., 27.) Petitioner's supervisors on the yard
8  crew never filled out a job performance evaluation for Petitioner. Id. at 28.

9  Petitioner testified to the Board that he had a bad attitude and a generally bad way of thinking
10  at the time he committed his crime. Id. at 17. He credits his time in prison for making it possible for
11  him to learn how to read and obtain his GED and then teach those skill to others. Id.

12  Petitioner has written letters of apology to Officer Garcia, the police department, the District
13  Attorney, and the judge who proceeded over his trial. (Psychiatric Evaluation, 5.)

14  Petitioner's post-conviction progress reports have given him a classification score of 19,
15  which is the most desirable classification score an inmate with a life sentence can ever receive. (Tr.,
16  26.)

17  IV. Post-Commitment Plans

18  Petitioner plans to live with his sister and her family when released. (Tr., 21.) His sister has
19  arranged for Petitioner to have an interview with her employer, Jack-in-the-Box, upon release. Id. at
20  21, 23. Petitioner's brother-in-law has also offered Petitioner a paper route through his employer,
21  Press Enterprise newspaper. Id. at 21-22. Petitioner does not have a driver's licence, but told the
22  Board that his sister's family has been doing paper routes for years and would drive him until he is
23  able to obtain a license. Id. at 22. Petitioner's sister wrote a letter of support assuring the Board that
24  she would be happy to have Petitioner come live with her and would do whatever she could to
25  support him if released. Id. at 23.

26  Further letters of support were sent to the Board by Petitioner's parents and the Pastor and
27
28

Associate Pastor of Greater Faith Grace Bible Church. Id. at 20-22. Petitioner's parents claim that Petitioner has grown socially, emotionally, and spiritually in prison. Id. at 21. Pastor Harry Bratt has known Petitioner since his youth and sometimes brought Petitioner's parents to the prison to visit Petitioner. Pastor Bratt's letter supports Petitioner's release and Associate Pastor Booker Baskin calls Petitioner an example to others. Id. at 21-23.

V. Psychological Evaluations

Petitioner's most recent psychological report, written by Dr. Ohrling, is supportive of Petitioner's release with the recommendation that Petitioner continue to attend Alcoholics Anonymous and Narcotics Anonymous. (Psychiatric Evaluation, 8.) The report notes that Petitioner has "no record of aggression or violence in prison," and says that

> [i]n a less controlled setting such as a return to the community, the inmate can be likely to hold present gains. With in a controlled setting it appears that this inmate's propensity for violence is less than that of the average inmate, and within the community it would also be less than the average citizen.

(Tr., 36, 39.) The report goes on to say that "[c]riminal-mindedness and criminality did not appear to be primary elements of [Petitioner's] offense" and that the offense did not appear to be premeditated. Id. at 37. Dr. Ohrling lists Petitioner's drug history and alcohol abuse as high risk factors and notes that drugs and alcohol played a significant role in the commitment offense. (Id. at 38.) Dr. Ohrling observed that Petitioner is extensively remorseful and acknowledges the wrongfulness of his actions and is "highly motivated to undertake constructive changes in his life." (Psychiatric Evaluation, 6.)

**DISCUSSION**

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the deprivation in question arose out of the California Correctional Institution in Tehachapi, California, which is located within the jurisdiction of this court. 28 U.S.C.

§ 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

II. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)) (overruled on other grounds by Lindh, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after the statute's enactment)). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer v. Andrade, 538 U.S. 63, 70-71; see also Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A Federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established Federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the State court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that this Court give considerable deference to state court decisions. A state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and the Federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

In this case, Petitioner claims that his due process rights were violated when the Board denied him parole and it is this Court's job to determine whether the State court's decision

upholding that decision is contrary to or involves an unreasonable application of Federal law. If the Court determines that the State has indeed deprived Petitioner of a liberty or property interest without sufficient due process, habeas relief can only be granted if that deprivation was contrary to or an unreasonable application of Federal law. Williams, 529 U.S. at 410-12.

III. Review of Petitioner's Claim

Petitioner claims that the Board unconstitutionally denied him parole. The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The last reasoned decision in this case was that of the Superior Court denying Petitioner's petition for writ of habeas corpus. The Court must therefore examine whether the Superior Court's ruling was contrary to or an unreasonable application of clearly established Federal law.

Due process claims require a two step analysis; whether the state has deprived the prisoner of a liberty or property interest and, if so, whether the procedures accompanying that deprivation were constitutionally sufficient. Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).

**A. Liberty Interest**

Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer, 2). The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). That court has held, however, that when a state statute "'uses mandatory language ('shall') to 'create a presumption that parole release will be granted' when the designated findings are made,' the statute creates a liberty interest in parole." Sass, 461 F.3d at 1127 (quoting Bd. of Pardons v. Allen, 482 U.S. 369, 377-78 (1987)). As discussed below, Cal. Penal Code § 3041(b) contains such language on which the Ninth Circuit relies in holding that California prisoners whose sentence provides for the possibility of parole have "a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons v. Carey, 505 F.3d 846,

850 (9th Cir. 2007);[2] see also McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

**B. Some Evidence Standard**

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. See Greenholtz v. Inmates of Nebraska Penak & Correctional Complex, 442 U.S. 1, 12 (1979). "The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'" Irons, 505 F.3d at 851 (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985)). The "some evidence" analysis is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." Id. (citing Biggs, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence'. . . . constituted an unreasonable application" of the standard articulated in Hill. Id.

California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); see In re

---

[2] Irons rejects the argument that In re Dannenberg, 34 Cal.4th 1061 (2005), implicitly held that inmates do not have a liberty interest under California law.

Dannenberg, 34 Cal.4th 1061, 1078-1080 (Cal. 2005). The Board decides whether a prisoner is presently too much of a risk to be suitable for parole by applying factors set forth in the California Code of Regulations. See Cal. Code Regs., tit. 15, § 2402; Irons, 505 F.3d at 851-852; Biggs, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly call for consideration of "the base and other commitment offenses, including behavior before, during and after the crime."[3] Cal. Code Regs., tit. 15, § 2402(b). Factors tending to support a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); see also In re Shaputis, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008). However helpful the above factors may be in ascertaining whether an inmate is suitable for parole, the threshold questions remains whether "some evidence" supports the finding that the petitioner poses a current risk of danger to society–a mere recitation of those factors is not enough to answer such an individualized inquiry. See In re Lawrence, 44 Cal.4th 1181, 1212 (Cal. 2008).

### 1. *Applicability of the some evidence standard*

Respondent argues that there is no clearly established Federal law requiring the application of the some evidence standard to the State's denial of parole. (Answer, 5.) Respondent asks the Court to disregard the plethora of Ninth Circuit authority which holds that the some evidence standard is clearly established Federal law and applicable to parole cases under AEDPA. See, e.g., Sass, 461 F.3d 1129 (applying the some evidence standard). Respondent contends that the United States Supreme

---

[3] The statute specifically states: "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

1  Court's precedent requires only a hearing and a statement of reasons for the denial of parole. (Answer,
2  4 (citing Greenholtz, 442 U.S. at 16)).
3         Ninth Circuit precedent may be persuasive authority for purposes of determining whether a
4  particular state court decision is an unreasonable application of Supreme Court law, and may also help
5  determine what law is clearly established. Sims v. Rowland, 414 F.3d 1148, 1151 (9th Cir. 2005),
6  *cert. denied*, 546 U.S. 1066 (2005). In Sass, the Ninth Circuit explicitly rejected the argument
7  Respondent raises, stating:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the ... board were without support or otherwise arbitrary." (citation omitted). Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest--that in parole--without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

Sass, 461 F.3d at 1129.

       Additionally, the Court notes that Respondent fails to cite any district or Circuit authority for the proposition that the some evidence standard is not clearly established federal law in the parole context. Rather, the Court's review has found that an overwhelming number of district courts, including this district, currently hold that the some evidence standard is the applicable law for parole cases. Ramos v. Cary, No. CIV S-06-0974-FCD-CMK-P, 2009 WL 2425715, at *3-4 (E.D. Cal. 2009) (applying some evidence standard); Grant v. Salazar, No. CV 06-6623 VFB (JC), 2009 WL 2566947, at *5-6 (C.D. Cal. 2009) (same); Kler v. Board of Prison Terms, No. CIV S-06-1919-FCD-SMK-P, 2009 WL 2591250, at * 3-5 (E.D. Cal. 2009) (same). In light of the fact that no district court has rejected the some evidence standard as the applicable standard in parole cases, and given the Ninth Circuit's decisions in Irons, 505 F.3d at 850-851, Sass, 461 F.3d at 1128-1129 (finding some evidence standard is "clearly established in the parole context"), and Biggs, 334 F.3d at 914, the Court finds Respondent's argument unpersuasive.

## 2. *Application of the some evidence standard*

Initially, the Court notes that Respondent failed to address in any substantive manner whether Petitioner's claim was meritorious under the some evidence standard. (See Answer, 5-6.)

In this case, the Board found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society based on the commitment offense. (Tr., 55.) The Board found that the commitment offense was "carried out in a dispassionate and calculated manner, a manner which demonstrates an exceptionally callous disregard for human suffering." Id. The Superior Court denied Petitioner's habeas petition finding that the "offense involved great violence and an extremely serious attack with a firearm upon a police officer by the inmate." (Answer, Ex. 2, 2.)

> [A]lthough the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

In re Lawrence, 44 Cal.4th at 1214 (emphasis in original). However, the Ninth Circuit has consistently held that a petitioner's commitment offense may be solely relied upon as the basis of denying parole when the petitioner has yet to serve the minimum term required by his sentence. Irons, 505 F.3d at 853 (citing Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125). In this case, Petitioner was sentenced to a minimum of fifteen years plus a two year weapons enhancement–a total of seventeen years. Petitioner was committed to prison on September 3, 1993, so he would not have served his seventeen year minimum until 2010. Petitioner was denied parole in 2007; because that was prior to him serving out his minimum sentence, it is appropriate for the Board to rely solely on the commitment offense as evidence of current dangerousness.

## CONCLUSION

Because Petitioner has not yet served his minimum sentence, it was not contrary to or an unreasonable application of clearly established Federal law for the Superior Court to find that the Board's reliance on Petitioner's commitment offense was sufficient evidence upon which to base its

denial of parole.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that:

1) Petitioner's petition for writ of habeas corpus be DENIED and

2) and the Clerk of the Court be DIRECTED to enter judgement in this case.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 26, 2010**         /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE